IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

Nos. 19-2725

KEITH SMITH,

*Plaintiff-Appellant,*

*-vs-*

CITY OF CHICAGO AND CHICAGO POLICE OFFICERS
RANITA MITCHELL AND HERMAN OTERO,

*Defendants-Appellees.*

—————————————————————

Appeal from the United States District Court
for the Northern District of Illinois
No. 18-cv-4918 — Virginia M. Kendall, District Judge.

—————————————————————

# BRIEF AND SHORT APPENDIX
# OF PLAINTIFF-APPELLANT

Joel A. Flaxman
*Counsel of Record*
Kenneth N. Flaxman
200 South Michigan Avenue
Suite 201
Chicago, Illinois 60604
(312) 427-3200
*Attorneys for Plaintiff-Appellant*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 19-2725

Short Caption: Smith v. Chicago

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervener or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **PLEASE CHECK HERE IS ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Keith Smith

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Kenneth N. Flaxman P.C.

(3)  If the party, amicus or intervener is a corporation:

 i)  Identify all its parent corporations, if any; and

 ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervener's stock:

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Joel A. Flaxman    Date: 2/12/2020

Attorney's Printed Name:  Joel A. Flaxman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ✔  **No** ☐

Address:  200 S Michigan Ave Ste 201

 Chicago, IL 60604

Phone Number:  (312) 427-3200    Fax Number:  (312) 427-3930

E-Mail Address: jaf@kenlaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __19-2725__

Short Caption: __Smith v. Chicago__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervener or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IS ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Keith Smith

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Kenneth N. Flaxman P.C.

(3)    If the party, amicus or intervener is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervener's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: __/s/ Kenneth N. Flaxman__    Date: __2/12/2020__

Attorney's Printed Name: __Kenneth N. Flaxman__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** [ ] **No** [ ]

Address: __200 S Michigan Ave Ste 201__

__Chicago, IL 60604__

Phone Number: __(312) 427-3200__    Fax Number: __(312) 427-3930__

E-Mail Address: __knf@kenlaw.com__

# TABLE OF CONTENTS

I.    Jurisdictional Statement ................................................................ 1

II.   Issues Presented for Review ...................................................... 2

III.  Statement of the Case .................................................................. 2

      A. Plaintiff's Arrest and Prosecution ..................................... 3

      B. The City of Chicago's "Code of Silence" ........................... 5

      C. Defendants' Motions to Dismiss ........................................ 6

IV.  Summary of Argument ................................................................ 9

V.   Argument ...................................................................................... 10

      A. Standard of Review ............................................................ 10

      B. The Supreme Court Answered the Accrual Question
         Presented Here in *McDonough v. Smith* ...................... 10

           1.  Plaintiff's Fabricated Evidence Claim
               Accrued on Acquittal ............................................... 10

           2.  *McDonough v. Smith* Requires this Court to
               Revisit Its Contrary Holdings ............................... 15

      C. Even under *Manuel II*, Plaintiff's Claim Is Timely ...... 23

      D. The Court Should Remand Plaintiff's Conspiracy
         and *Monell* Claims .......................................................... 27

VI.  Conclusion .................................................................................... 27

# TABLE OF AUTHORITIES

*Albright v. Oliver*, 510 U.S. 266 (1994) ............................................................ 16

*Anderson v. City of Rockford*, 932 F.3d 494 (7th Cir. 2019) ......................... 27

*Bielanski v. County of Kane*, 550 F.3d 632 (7th Cir. 2008) ..................... 26, 27

*Black v. Montgomery County*, 835 F.3d 358 (3d Cir. 2016) ................... 24-25

*Briscoe v. LaHue*, 460 U.S. 325 (1983) ............................................................ 15

*Edwards v. Balisok*, 520 U.S. 641 (1997) ....................................................... 20

*Heck v. Humphrey*, 512 U.S. 477 (1994) ............................................. 14, 20, 21

*Hernandez v. Sheahan*, 455 F.3d 772 (7th Cir. 2006) ..................................... 26

*Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018) ...................................................... 23

*Justices of Bos. Mun. Court v. Lydon*, 466 U.S. 294 (1984) ......................... 25

*Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019) ......................... passim

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ...................................... passim

*Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) ......................... passim

*McDonough v. Smith*, 139 S. Ct. 2149 (2019) ........................................ passim

*McDonough v. Smith*, 898 F.3d 259 (2d Cir. 2018) ....................................... 12

*Mitchell v. City of Elgin*, 912 F.3d 1012 (7th Cir. 2019) ...................... passim

*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) ............... 6

*Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) ....................................... 16

*Preiser v. Rodriguez*, 411 U.S. 475 (1973) .............................................. 20, 21

*Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) ................................. 17, 19, 21

*Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011) ........................................... 25

*Serino v. Hensley*, 735 F.3d 588 (7th Cir. 2013) ............................................. 18

*Soldal v. Cook County*, 506 U.S. 56 (1992) ................................................ 11, 23

*United Central Bank v. Davenport Estate LLC*,
　　815 F.3d 315, 318 (7th Cir. 2016) ................................................ 10

*United States v. Gordon*, 513 F.3d 659 (7th Cir. 2008) ........................... 22-23

*Wallace v. Kato*, 549 U.S. 384 (2007) ................................................ 21

*Wiley v. City of Chicago*, 361 F.3d 994 (7th Cir. 2004) ........................... 15-16

*Winfrey v. Rogers*, 882 F.3d 187, *superseded by*
　　901 F.3d 483 (5th Cir. 2018) ................................................ 22

28 U.S.C. § 1291 ................................................ 1

28 U.S.C. § 1343 ................................................ 1

42 U.S.C. § 1983 ................................................ passim

Federal Rule of Civil Procedure 12(b)(6) ................................................ 1, 6, 7

Federal Rule of Civil Procedure 12(e) ................................................ 6

Federal Rule of Civil Procedure 59 ................................................ 1

Seventh Circuit Rule 40(e) ................................................ 22

## I.    Jurisdictional Statement

Plaintiff Keith Smith invoked the jurisdiction of the district court under 28 U.S.C. § 1343 to assert claims arising under 42 U.S.C. § 1983 against the City of Chicago and Chicago Police Officers Ranita Mitchell and Herman Otero.

The district court granted defendants' Rule 12(b)(6) motion to dismiss plaintiff's claims on January 3, 2019. (Short Appendix 1-15.) Judgment was entered the same day. (Short Appendix 16.)

Plaintiff filed a timely motion under Federal Rule of Civil Procedure 59 (ECF No. 39), which the district court granted on April 30, 2019, vacating the earlier judgment. (Short Appendix 17-23.)

The district court granted defendants' second Rule 12(b)(6) motion on September 6, 2019 (Short Appendix 23-33) and entered judgment the same day. (Short Appendix 34.)

Plaintiff did not file any motions after entry of the second judgment and timely filed his notice of appeal on September 6, 2019. (ECF No. 64.)

This is an appeal from a final judgment that adjudicates all claims of all parties. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1291.

## II.    Issues Presented for Review

1.    Does *McDonough v. Smith*, 139 S. Ct. 2149 (2019), require this Court to revisit its contrary holdings in *Manuel v. City of Joliet (Manuel II)*, 903 F.3d 667 (7th Cir. 2018) and *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019) and hold that plaintiff's fabricated-evidence claim under 42 U.S.C. § 1983 accrued upon acquittal?

2.    In the alternative, if the Court adheres to its outlier position that a fabricated-evidence claim accrues when the seizure caused by the fabrication ends, is plaintiff's claim timely because he was "seized" while on bond awaiting trial?

## III.    Statement of the Case

Plaintiff Keith Smith was falsely charged in 2013 with possession of a firearm. He waited nearly three years before he was exonerated at a bench trial. Plaintiff was first incarcerated for seven months in the Cook County Jail then released on bond for more than two years before he was exonerated at trial.

Plaintiff filed this case less than two years after his acquittal; plaintiff sought money damages because the defendant officers had fabricated the evidence that caused his prosecution, incarceration, and loss of freedom while on bail. The district court concluded that plaintiff's claims had accrued when he was released on bond on March 29, 2014 and were therefore time

barred because plaintiff waited until after he was acquitted on July 21, 2016 to file his lawsuit.

## A. Plaintiff's Arrest and Prosecution

On September 10, 2013, defendants Chicago Police Officers Ranita Mitchell and Herman Otero unlawfully stopped and searched a vehicle in which plaintiff was a passenger. (Second Amended Complaint, Short Appendix 35-36, ¶ 5.) The defendant officers concocted the false story that they had observed plaintiff, while a passenger in the vehicle, make a furtive movement and defendant Mitchell claimed to have found a bullet inside the vehicle. (*Id.* ¶ 7-8.) The purpose of these fabrications was to justify the officers' illegal search of the engine area of the vehicle where they claimed to have found a firearm and to create evidence suggesting that the firearm belonged to plaintiff.[1]

Defendants Mitchell and Otero memorialized their false story in official police reports and criminal complaints and communicated the narrative they had concocted to prosecutors.[2] (Second Amended Complaint, Short Appendix 36, ¶ 9.) Because of this wrongful conduct, plaintiff was charged with

---

[1] Plaintiff includes this and other additional allegation consistent with *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143 (7th Cir. 2010) (plaintiff may suggest facts outside of the pleadings on an appeal from a Rule 12(b)(6) motion to dismiss).

[2] Plaintiff eschewed any claim about the search, seizure, or arrest. (Second Amended Complaint, Short Appendix 35-36, ¶ 5.)

various weapons offenses and held at the Cook County Jail for seven months before being released on bond on or about March 29, 2014. (*Id.* ¶ 10.)

Plaintiff made regular court appearances (about one per month) until he was found not guilty at a bench trial on July 21, 2016. (Second Amended Complaint, Short Appendix 37, ¶ 15.) The prosecutor relied on the fabricated evidence at trial.[3]

Plaintiff was subject to numerous limitations on his liberty while on bond awaited trial, including:

    a.  Plaintiff was required to appear in court at the state's command, about once per month.

    b.  Plaintiff was required to seek formal permission from the trial judge before he could exercise his right to travel outside the State of Illinois.

    c.  Plaintiff's employment prospects were diminished because he had to appear in court about once each month; and

    d.  Plaintiff experienced the financial and emotional strain of preparing a defense.

(Second Amended Complaint, Short Appendix 36-37, ¶¶ 11-14.)

---

[3] Plaintiff includes this additional allegation consistent with *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143 (7th Cir. 2010).

### B. The City of Chicago's "Code of Silence"

Plaintiff also alleged that the individual defendants acted pursuant to a widespread practice within the Chicago Police Department of a "code of silence" when they concocted their false story and fabricated evidence against him. (Second Amended Complaint, Short Appendix 41, ¶¶ 30-31.) Plaintiff supported this allegation with the official report of the United States Department of Justice, "Investigation of the Chicago Police Department," January 13, 2017, and its finding that "a code of silence exists, and officers and community members know it." (*Id.* ¶ 27.) Plaintiff also relied on Chicago Mayor Rahm Emanuel's acknowledgement of the continued existence of the code of silence within the Chicago Police Department when, speaking in his capacity as Mayor, he admitted that the code of silence had resulted in a culture that tolerated extreme acts of abuse. (*Id.* ¶ 25.)

Plaintiff alleged in his amended complaint that the individual defendant officers had concocted their false story and fabricated evidence because they knew there would not be any consequence for their misconduct because of the code of silence. (Second Amended Complaint, ECF No. 45, ¶ 31.) Plaintiff also alleged in his amended complaint that Chicago police officers have concocted false stories and fabricated evidence in numerous cases because they knew there would not be any sanction for such misconduct. (*Id.* ¶ 22.) Plaintiff listed four examples to support this allegation. (*Id.* ¶ 23.)

Plaintiff accordingly sought to impose liability on the City of Chicago pursuant to *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) for the officers' conduct caused by the City's code of silence.

### C. Defendants' Motions to Dismiss

Plaintiff filed his complaint on July 18, 2018 (ECF No. 1), more than two years after his release on bond but within two years of his acquittal. Defendants moved under Rule 12(b)(6) to dismiss plaintiff's claim as untimely and to dismiss plaintiff's conspiracy claim and claims against the City for failure to state a claim.[4] (ECF No. 16)

The district court granted the motion to dismiss, relying on this Court's opinion in *Manuel v. City of Joliet (Manuel II)*, 903 F.3d 667 (7th Cir. 2018), to hold that plaintiff's claims had accrued when he was released from custody on bond, more than two years before he filed this case. (Short Appendix 11-13.) The district court then dismissed plaintiff's conspiracy and *Monell* claims because it had dismissed the underlying constitutional claims. (Short Appendix 14-15.) The court below offered other grounds for dismissing plaintiff's *Monell* claim: a failure to plead causation and a failure to allege more than one isolated incident of misconduct. (Short Appendix 15.)

---

[4] Defendants also moved under Rule 12(e) for a more definite statement. (ECF No. 16 at 1.) The district court denied this motion, stating that the complaint is "comprehensible and not so vague or ambiguous as to preclude a reasonable response." (Short Appendix 3-4.)

After plaintiff filed a motion to reconsider (ECF No. 39), the district court vacated its ruling in light of this Court's intervening decision in *Mitchell v. City of Elgin*, 912 F.3d 1012 (7th Cir. 2019) that it was an open question whether pretrial release on bond was a deprivation of liberty sufficient to support a Fourth Amendment claim. (Short Appendix 17-23.)

Plaintiff then filed an amended complaint.[5] (ECF No. 45.) Defendants responded with a second Rule 12(b) motion to dismiss. (ECF No. 46.)

The district court granted the motion, adhering to its initial ruling that plaintiff's claim accrued when he was released on bond. (Short Appendix 24-33.) The district court relied on *Manuel v. City of Joliet (Manuel II)*, 903 F.3d 667 (7th Cir. 2018) for the proposition that a Fourth Amendment claim of pretrial detention accrues when the detention ends, rather than on favorable termination of the prosecution. (Short Appendix 27.)

The district court disregarded plaintiff's allegations that his release on bail had caused him to suffer diminished employment prospects because of the need to miss work and appear at monthly court hearings and his allegations that his release on bail caused him to suffer the financial and

---

[5] Plaintiff captioned the amended complaint as the "Second Amended Complaint" (ECF No. 45) because he had attached a proposed First Amended Complaint to his motion to reconsider. (Exhibit 1 to ECF No. 39.)

emotional strain of preparing a defense. (Short Appendix 28 n.2.) The court below described these hardships as "de minimis." (*Id.*)

The district court next concluded that the need to seek permission to leave the state and the obligation to appear in court about once each month were not sufficiently burdensome to be a seizure under the Fourth Amendment. (Short Appendix 28.)

The district court acknowledged that the Supreme Court had recently applied a rule of accrual based on favorable termination to an evidence-fabrication claim in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), but held that case to be distinguishable for two reasons: First, because the claim there arose under the Fourteenth Amendment and second, because in plaintiff's case, "the allegedly fabricated evidence was *not* used against him at trial."[6] (Short Appendix 30) (emphasis in original.)

The district court again dismissed plaintiff's conspiracy and *Monell* claims as derivative of his underlying constitutional claims. (Short Appendix 32.) Defendants had not challenged the sufficiency of the allegations for either claim (ECF No. 47 at 9-10), and the district court did not discuss that issue in dismissing the amended complaint.

---

[6] The district court did not identify the source for this factual finding, which was not discussed in any of the district court filings and is flatly inconsistent with the record. *See* above at 4.

### IV.    Summary of Argument

The issue in this appeal is whether plaintiff's claim for damages resulting from his wrongful prosecution based on fabricated evidence accrued when the prosecution terminated in his favor. The district court followed precedent of this Court decided before *McDonough v. Smith*, 139 S. Ct. 2149 (2019) to hold that the claim accrued when plaintiff was released on bail, more than two years before the prosecution terminated.

This Court should reverse and abandon its ruling in *Manuel v. City of Joliet (Manuel II)*, 903 F.3d 667, 669 (7th Cir. 2018) that a claim, such as that advanced by plaintiff in this case, accrued when he was released from custody because that rule is inconsistent with *McDonough*. The rule required by *McDonough* is that a claim for wrongful prosecution based on fabricated evidence accrues on favorable termination of the criminal case.

Even if the Court does not revisit *Manuel II*, it should hold that plaintiff's claim is timely because his conditions of bond constituted a seizure under the Fourth Amendment. *See Mitchell v. City of Elgin*, 912 F.3d 1012, 1017 (7th Cir. 2019) (noting that whether release on bond constitutes a seizure is an open question). This result is supported by out-of-circuit precedent and by the Supreme Court's opinion in *McDonough*.

## V.    Argument

### A. Standard of Review

The Court reviews *de novo* the district court's order granting a motion to dismiss, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in favor of plaintiff. *United Central Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016).

### B. The Supreme Court Answered the Accrual Question Presented Here in *McDonough v. Smith*

The Supreme Court resolved the accrual question presented in this appeal in *McDonough v. Smith*, 139 S. Ct. 2149 (2019) when it held: "The statute of limitations for a fabricated-evidence claim like McDonough's does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *McDonough*, 139 S. Ct. at 2154-55.

The Court should apply this rule to plaintiff's fabricated-evidence claim and conclude that the claim did not accrue until he was acquitted at trial. The Court should also explicitly overrule its decisions that are inconsistent with *McDonough*.

#### 1.  Plaintiff's Fabricated Evidence Claim Accrued on Acquittal

The plaintiff in *McDonough* did not rely on a specific constitutional provision, and the Court assumed without deciding that the Second Circuit

had correctly viewed the claim as arising under the Due Process Clause. *McDonough*, 139 S. Ct. at 2155.[7] The Court noted that more than one constitutional provision might be appropriate for such a claim, quoting its opinion in *Soldal v. Cook County*, 506 U.S. 56, 70 (1992): "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *McDonough*, 139 S. Ct. at 2155 n.2. Plaintiff shows below that *McDonough* is not limited to claims under the Due Process Clause, but sets out a rule of accrual for any Section 1983 fabrication of evidence claim rooted in a deprivation of liberty.

*McDonough* arose from an investigation into forged absentee ballots. The plaintiff, a commissioner of the county board of elections, alleged that Smith, a special prosecutor, had fabricated evidence to prosecute McDonough for election law violations. *McDonough*, 139 S. Ct. at 2154. After arraignment, McDonough was "released (with restrictions on his travel) pending trial." *Id.*

Following his acquittal, McDonough sued the special prosecutor, asserting claims under Section 1983 for fabrication of evidence and malicious

---

[7] As explained below at 23, the assumption by the Supreme Court that the plaintiff in *McDonough* could assert a Due Process evidence fabrication claim is contrary to the holding of this Court in *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) that *Manuel v. Joliet*, 137 S. Ct. 911 (2017) had rejected any Due Process claim in favor of one brought under the Fourth Amendment.

prosecution. *McDonough*, 139 S. Ct. at 2154. The question before the Supreme Court was when the fabrication of evidence claim had accrued.[8] The question presented to the Supreme Court did not identify any constitutional provision:

> Whether the statute of limitations for a Section 1983 claim based on fabrication of evidence in criminal proceedings begins to run when those proceedings terminate in the defendant's favor (as the majority of circuits has held) or whether it begins to run when the defendant becomes aware of the tainted evidence and its improper use (as the Second Circuit held below).

Question Presented, *McDonough v. Smith*, 18-485.[9] The Supreme Court likewise did not rest its opinion on a specific constitutional provision; a six-justice majority rejected the view of three dissenting justices that it was necessary to first identify a specific constitutional provision. *McDonough*, 139 S. Ct. at 2161 (Thomas, J., dissenting).

The Court observed that the accrual question had divided the courts of appeals, which aside from the Second Circuit had "held that the statute of limitations for a fabricated-evidence claim does not begin to run until

---

[8] The district court concluded that the malicious prosecution claim was barred by prosecutorial immunity and the court of appeals affirmed: "As the malicious prosecution claim relates only to Smith's prosecutorial function, it is barred by absolute immunity." *McDonough v. Smith*, 898 F.3d 259, 269 (2d Cir. 2018) (footnote omitted).

[9] Available at https://www.supremecourt.gov/qp/18-00485qp.pdf (accessed Feb. 12, 2020)

favorable termination of the challenged criminal proceedings." *McDonough*, 139 S. Ct. at 2154. The Court resolved this conflict by adopting a bright-line rule that is fully applicable to this case:

> The statute of limitations for McDonough's § 1983 claim alleging that he was prosecuted using fabricated evidence began to run when the criminal proceedings against him terminated in his favor—that is, when he was acquitted at the end of his second trial.

*McDonough*, 139 S. Ct. at 2161. As explained above, the Court did not rely on the choice of the Due Process Clause over any other constitutional provisions. The Court should therefore reject any attempt to distinguish *McDonough* on the ground that the claim in that case arose under the Due Process Claim. (Short App. 30.)

The Court explained in *McDonough* that it was relying on an analogy to malicious prosecution, which it viewed as "the most natural common-law analogy," and on practical considerations that arise when there is parallel criminal and civil litigation. *McDonough*, 139 S. Ct. at 2155.

Malicious prosecution was the proper analogy, the Court held, because of the essentials of plaintiff's claim: "His claim requires him to show that the criminal proceedings against him—and consequent deprivations of his liberty—were caused by [defendant's] malfeasance in fabricating evidence." *Id.* at 2156 (footnote omitted). Plaintiff's claims here are no different. As in *McDonough*, the claims here "challenge the integrity of criminal

prosecutions undertaken 'pursuant to legal process.'" *Id.* (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)).

Building on the analogy to malicious prosecution, *McDonough* holds that the plaintiff "could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution." *McDonough*, 139 S. Ct. at 2156. The Court bolstered this conclusion by referring to *Heck v. Humphrey*, 512 U.S. 477, 484 (1994), where it expressed "pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough*, 139 S. Ct. at 2157.

The *McDonough* Court refused to impose a "ticking limitations clock" on criminal defendants who learn that fabricated evidence is being used against them. *McDonough*, 139 S. Ct. at 2158 As the Court explained, the rule applied by the district court in this case creates an "untenable choice," where the criminal defendant must either let his claim expire or prosecute a civil case while he awaits his criminal trial, thereby "tipping his hand as to his defense strategy, undermining his privilege against self-incrimination, and taking on discovery obligations not required in the criminal context." *Id.*

-14-

The district court in this case sought to distinguish *McDonough* on its mistaken view that the fabricated evidence had not been used against plaintiff at trial. (Short App. 30.) This assertion is belied by the record. Defendant Mitchell testified to the false police story at trial. Moreover, the Supreme Court did not rely on the use of fabricated evidence at trial, stating that "McDonough's acquittal was unquestionably a favorable termination." *McDonough*, 139 S. Ct. at 2160 n.10. The same is true for plaintiff's acquittal.[10]

The considerations underlying *McDonough* apply with equal force in this case. The Court should therefore apply the rule of *McDonough* to plaintiff's claims and hold that they are timely because they accrued on the termination of criminal proceedings.

### 2. *McDonough v. Smith* Requires this Court to Revisit Its Contrary Holdings

This Court has long been an outlier circuit in its treatment of claims of police misconduct that cause a wrongful prosecution that resulted in an acquittal.

In *Manuel v. City of Joliet (Manuel I)*, 137 S. Ct. 911 (2017), the Supreme Court rejected this Court's longstanding rule that "[t]he scope of a

---

[10] A rule that required the use of fabricated evidence at trial would be inconsistent with absolute witness immunity. *Briscoe v. LaHue*, 460 U.S. 325 (1983).

Fourth Amendment claim is limited up until the point of arraignment." *Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir. 2004).

This Court's line of cases overruled in *Manuel I* began with *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), where the Court overruled its previous decisions that had recognized a Section 1983 action that accrued on the favorable termination of a criminal prosecution and rejected any "constitutional claim founded on malicious prosecution." *Id.* at 751. The Court relied on its view that in *Albright v. Oliver*, 510 U.S. 266 (1994) "seven justices" had concluded that there is no "constitutional right not to be prosecuted without probable cause." *Id.* 750.

No other circuit adopted this reading of *Albright* and the Supreme Court quickly dispatched the linchpin of *Newsome* in *Manuel I*, when it described *Albright* as a case where "five Justices in two opinions remitt[ed] Albright to the Fourth Amendment."[11] *Manuel I*, 137 S. Ct. at 918.

*Manuel I* holds that "detention without probable cause violates the Fourth Amendment 'when it precedes, but also when it follows, the start of legal process in a criminal case.'" *Lewis v. City of Chicago*, 914 F.3d 472, 474 (7th Cir. 2019) (quoting *Manuel I*, 137 S. Ct. at 918).

---

[11] This Court had read *Albright* differently, stating that "the position that Justices Kennedy and Thomas took in *Albright [v. Oliver*, 510 U.S. 266 (1994)] … constitutes the effective holding of the Court." *Newsome*, 256 F.3d at 751.

-16-

The Supreme Court did not rule in *Manuel I* on when that claim accrued, leaving that question for this Court on remand. *Manuel I*, 137 S. Ct. at 922. The Supreme Court instructed this Court to begin with the common law and use the rules that apply to the most analogous common law tort as a guide for defining the rules that apply to the Fourth Amendment claim at issue. *Id.* at 920-21. The Supreme Court outlined the parties' competing positions: plaintiff argued for accrual upon favorable termination by analogizing to the common law tort of malicious prosecution and defendants argued that the claim accrued when the plaintiff was arraigned based on an analogy to false arrest. *Id.* at 921. The Court noted that the eight circuits to consider the question had sided with plaintiff. *Id.* at 921 & n.9.

On remand in *Manuel II*, this Court rejected both proposals discussed by the Supreme Court, holding that a Fourth Amendment claim for wrongful pretrial detention accrues on the date the detention ends. *Manuel v. City of Joliet (Manuel II)*, 903 F.3d 667, 669 (7th Cir. 2018). The Court did not begin its analysis with the common law as the Supreme Court had suggested. Instead, *Manuel II* "rejected analogies to common-law torts in section 1983 actions." *Savory v. Cannon*, 947 F.3d 409, 417 n.4 (7th Cir. 2020) (en banc).

The Court held in *Manuel II* that it was *required* to reject those analogies by the Supreme Court's opinion in *Manuel I*, stating that "the Justices deprecated the analogy to malicious prosecution." *Manuel II*, 903 F.3d at 670. *McDonough*, of course, took a different approach, starting with common-law analogies and firmly holding that malicious prosecution was the appropriate tort to consider. *McDonough*, 139 S. Ct. at 2156.

In its ruling on remand in *Manuel II*, this Court continued to refuse to recognize a Section 1983 claim that accrued on the favorable termination of criminal proceedings. *Manuel v. City of Joliet (Manuel II)*, 903 F.3d 667, 670 (7th Cir. 2018). The Court in *Manuel II* reaffirmed its *Newsome*-based decision in *Serino v. Hensley*, 735 F.3d 588 (7th Cir. 2013), relying on that case for the proposition that "there is no such thing as a constitutional right not to be prosecuted without probable cause." *Manuel II*, 903 F.3d at 670, (quoting *Serino*, 735 F.3d at 593). The Court in *Manuel II* adopted the rule that a claim for post-charge detention accrues when the detention ends, rather than upon favorable termination of the criminal case. *Manuel II*, 903 F.3d at 670. This rule is contrary to the accrual rule the Supreme Court adopted in *McDonough*. The Court's reasoning in *Manuel II* is also contrary to *McDonough*.

This Court recently flagged the divergence between *McDonough* and *Manuel II* in its en banc opinion in *Savory v. Cannon*, 947 F.3d 409, 417 n.4 (7th Cir. 2020). This is the appropriate case to resolve the inconsistency and overrule *Manuel II*.

The Court's analysis in *Manuel II* is inconsistent with *Manuel I* and *McDonough*; the Supreme Court's opinion in *Manuel I* stated that analogy to malicious prosecution was one possible way to resolve the accrual question. *Manuel I*, 137 S. Ct. at 921. Any doubt on this score was resolved by the holding of *McDonough* that malicious prosecution is the correct analogy to determine the rule of accrual for an evidence fabrication claim. *McDonough*, 139 S. Ct. at 2156.

The plaintiff in *McDonough*, like the plaintiff in this case, brought a Section 1983 claim arising from the fabrication of evidence. *McDonough* did not involve any pre-trial detention. The precise holding is that "[t]he statute of limitations for a fabricated-evidence claim like McDonough's does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *McDonough*, 139 S. Ct. at 2154-55. The Court should therefore abandon the contrary formulation it adopted in *Manuel II* and hold that plaintiff's Section 1983 claim did not accrue until he was acquitted at trial.

This Court also found support for its rule in *Manuel II* from cases holding that "the existence of detention forbids a suit for damages contesting that detention's validity." *Manuel II*, 903 F.3d at 670. The Court relied on *Preiser v. Rodriguez*, 411 U.S. 475 (1973), *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), concluding that "§ 1983 cannot be used to contest ongoing custody that has been properly authorized." *Manuel II*, 903 F.3d at 670. Thus, the Court held, the claim did not accrue until Manuel "was out of custody and could sue." *Id.* This analysis is not consistent with *McDonough*.

The Supreme Court in *McDonough* considered the same line of cases as applied to a criminal defendant who, unlike the plaintiff in *Manuel*, was not in custody awaiting trial. *McDonough* squarely holds that a defendant in that situation may not "bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing." *McDonough*, 139 S. Ct. at 2158. As the Supreme Court explained:

[T]he pragmatic considerations discussed in [*Heck v. Humph-rey*, 512 U.S. 477 (1994)] apply generally to civil suits within the domain of habeas corpus, not only to those that challenge convictions. See *Preiser*, 411 U.S. at 490–491. The principles and reasoning of Heck thus point toward a corollary result here: There is not "'a complete and present cause of action,'" [*Wallace v. Kato*, 549 U.S. 384, 388 (2007)], to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing. Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, see 512 U.S. at 486–487, will the statute of limitations begin to run.

*Id.* Under this analysis, which the en banc Court recently relied on in *Savory v. Cannon*, 947 F.3d 409, 417 (7th Cir. 2020), the proper accrual rule for plaintiff's claim is when he was acquitted.

The Supreme Court's opinion in *McDonough* also discussed the pragmatic considerations of adopting a rule, like the one adopted by the district court in this case, that would require a defendant facing criminal charges to prosecute a civil rights action while defending the criminal case. As discussed above at 14-15, that rule would create an unfair "ticking limitations clock" and impose an "untenable choice" on criminal defendants who discover that fabricated evidence is being used against them. *McDonough*, 139 S. Ct. at 2158. This Court relied on similar concerns in its recent en banc holding in *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) that the § 1983 claim of a prisoner pardoned after his release from prison accrues when he is pardoned and not when he is released. The Court should follow *Savory*

and apply "the analytical paradigm of *Heck* and *McDonough*," *id.* at 417, to hold that plaintiff's claim accrued upon the favorable termination of his criminal case.

In determining whether to overrule *Manuel II*, the Court should consider that the favorable termination rule of *McDonough* would not have altered the outcome of *Manuel II*. The plaintiff in *Manuel* was released one day after the charges against him were dropped, *Manuel II*, 903 F.3d at 668, meaning his claim would also be timely under the rule of *McDonough*.

The Court should also weigh that *Manuel II* did not discuss the uniform holding of eight other circuits that follow the favorable-termination rule, which the Supreme Court noted in *Manuel I*, 137 S. Ct. at 921. Nor did the Court in *Manuel II* consider the opinion of the Fifth Circuit, issued after *Manuel I*, adopting the favorable-termination rule. *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir. 2018).[12] The Court's opinion in *Manuel II* was therefore one that would "create a conflict between or among circuits," but there is no indication that it was circulated pursuant to Seventh Circuit Rule 40(e). Thus, there is further reason to doubt whether *Manuel II* is a "viable

---

[12] The Fifth Circuit issued its original opinion in *Winfrey* on February 5, 2018, explicitly referring to the question remanded to this Court in *Manuel I* and holding that the claim accrued upon favorable termination. *Winfrey v. Rogers*, 882 F.3d 187, 197 (5th Cir. 2018). The Fifth Circuit issued a superseding opinion on August 20, 2018, which did not alter the accrual holding. *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir. 2018). This Court decided *Manuel II* on September 10, 2018.

precedent." *United States v. Gordon*, 513 F.3d 659, 667-68 (Ripple, J., concurring).

In addition to revising *Manuel II*, the Court should recognize that *McDonough* overruled the holding of *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) that *Manuel v. Joliet*, 137 S. Ct. 911 (2017) had rejected any Due Process claim in favor of one brought under the Fourth Amendment. This Court had previously recognized such a claim in *Hurt v. Wise*, 880 F.3d 831, 843-44 (7th Cir. 2018). The Court overruled *Hurt* in *Lewis*, reasoning, "*Manuel I* makes clear that the Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention." *Lewis*, 914 F.3d at 479. This holding cannot be squared with *McDonough*'s assumption that the plaintiff could bring a due process claim for pretrial harms from fabrication of evidence. *McDonough*, 139 S. Ct. at 2155. As the Court noted in *McDonough*, "'[c]ertain wrongs affect more than a single right.'" *Id. at* 2155 n.2 (quoting *Soldal v. Cook County*, 506 U.S. 56, 70 (1992)).

For all these reasons, the Court should hold that *McDonough* overruled *Manuel II* and *Lewis*

### C. Even under *Manuel II*, Plaintiff's Claim Is Timely

Even if the Court does not agree that *McDonough* overruled *Manuel II*'s holding that a Fourth Amendment claim for unlawful pretrial detention accrues when the detention ends, the Court should hold that plaintiff's claim

is timely under that rule. As the Court has previously held, *Manuel II* did not reach the question of whether pretrial release on bond can constitute a Fourth Amendment "seizure." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1017 (7th Cir. 2019). "The panel in *Manuel II* had no occasion to address the question because Elijah Manuel was held in jail until the charges against him were dropped." *Id.*

After recognizing this open question in *Mitchell*, the Court chose not to address it, reversing the dismissal based on pre-*Manuel I* precedent and leaving the accrual question for the district court to consider in the first instance. *Mitchell*, 912 F.3d at 1017. If the Court continues to follow *Manuel II*, it should answer the question left open in *Mitchell* and hold that plaintiff's pretrial release on bond following seven months of pretrial detention constitutes a Fourth Amendment seizure.

The Court recognized in *Mitchell* that the circuits were divided about the extent to which pre-trial detention was a Fourth Amendment seizure. *Mitchell*, 912 F.3d at 1016. If the Court reaches this question, it should follow the well-reasoned opinion of the Third Circuit in *Black v. Montgomery County*, 835 F.3d 358, 366-67 (3d Cir. 2016). As that court explained, relying on an earlier holding, "'[p]re-trial restrictions of liberty aimed at securing a suspect's court attendance are all 'seizures' ... [because] the difference

between detention in jail, release on bond, and release subject to compliance with other conditions is in the degree of restriction on the individual's liberty, not in the kind of restriction.'" *Id.* at 367 (quoting *Schneyder v. Smith*, 653 F.3d 313, 320 (3d Cir. 2011)).

This result is consistent with the Supreme Court's holding in *McDonough* that there was a deprivation of liberty when a criminal defendant was "subject to restrictions on his ability to travel and other 'restraints not shared by the public generally.'" *McDonough v. Smith*, 139 S. Ct. 2149, 2156 n.4 (2019) (quoting *Justices of Bos. Mun. Court v. Lydon*, 466 U.S. 294, 301 (1984)).

In *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294 (1984), the Court held that a defendant released on personal recognizance awaiting trial is "in custody" for the purpose of federal habeas corpus jurisdiction. *Id.* at 301. The Supreme Court held in *McDonough* that this reasoning applies equally to plaintiff: for purposes of federal habeas corpus jurisdiction, plaintiff was "in custody" while on bond until the favorable termination of his criminal case. *McDonough*, 139 S. Ct. at 2158. As discussed above at 20, in *Manuel II*, the Court held that the availability of a habeas remedy meant that "a § 1983 suit had to wait until [plaintiff's] release." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018). Applied here, plaintiff's § 1983 suit

had to wait until the termination of his pretrial release bond. Thus, even under *Manuel II*, plaintiff's claim is timely.

The Court's discussion of this question in *Mitchell* referred to *Bielanski v. County of Kane*, 550 F.3d 632 (7th Cir. 2008). *Bielanski* is distinguishable, both on its facts and because the law of the Seventh Circuit in 2008 was that "the Fourth Amendment 'drops out of the picture following a person's initial appearance in court.'" *Bielanski*, 550 F.3d at 642 (quoting *Hernandez v. Sheahan*, 455 F.3d 772, 777 (7th Cir. 2006)). As *Mitchell* noted this legal formulation "was plainly abrogated in *Manuel I*." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1017 (7th Cir. 2019). The Court should therefore not follow *Bielanski*'s pronouncements on the scope of the Fourth Amendment.

Moreover, unlike the plaintiff in this case, who was arrested and held at the Cook County Jail for seven months, the plaintiff in *Bielanski* maintained that she had been "seized" by "the initiation of the prosecution, effected by a summons issued by the prosecutor, without probable cause. She did not name any other pre-trial restrictions in response to the motion to dismiss." *Bielanski*, 550 F.3d at 637. The plaintiff expanded her arguments on appeal, asserting that she had been "seized" by "an order not to leave Illinois without the permission of the Court." *Id.* Nonetheless, the plaintiff in *Bielanski* conceded that she had "not [been] arrested in the traditional

-26-

sense of the word but instead was compelled by a summons to appear in court." *Id.* In this case, however, there can be no dispute that plaintiff's seven months of detention at the Cook County Jail was a seizure.

Accordingly, even under *Manuel II*, plaintiff's claim is timely.

### D. The Court Should Remand Plaintiff's Conspiracy and *Monell* Claims

The district court never passed on the substance of the conspiracy and *Monell* claims plaintiff included in his amended complaint. Accordingly, this Court should remand those claims, so that the district court can consider them in the first instance. *See Anderson v. City of Rockford*, 932 F.3d 494, 513 (7th Cir. 2019).

### VI.  Conclusion

For the reasons above stated, the Court should reverse and remand.

Respectfully submitted,

/s/  Joel A. Flaxman
     Joel A. Flaxman
     *Counsel of Record*
     Kenneth N. Flaxman
     200 S Michigan Ave, Ste 201
     Chicago, IL 60604
     (312) 427-3200
     *Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

The undersigned, attorney for Plaintiff-Appellant, certifies that the foregoing brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a). The brief contains 6,023 words, as counted by the word-counting application of Microsoft Word 2016.

/s/  <u>Joel A. Flaxman</u>
Joel A. Flaxman
*an attorney for plaintiff-appellant*

# INDEX TO SHORT APPENDIX

Order Granting First Motion to Dismiss,
January 3, 2019 ....................................................................... 1

Judgment, January 3, 2019 ................................................ 16

Order Granting Motion to Reconsider, April 30, 2019 ................................. 17

Order Granting Second Motion to Dismiss,
September 6, 2019 ................................................................. 24

Judgment, September 6, 2019 ........................................ 34

Second Amended Complaint, May 27, 2019 .................................... 35

## Circuit Rule 30 Statement

The undersigned hereby certifies that all the materials required by parts (a and (b of Circuit Rule 30 are contain  ed in the following short appendix.

/s/  Joel A. Flaxman
Joel A. Flaxman
*an attorney for plaintiff-appellant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 4918 |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| CITY OF CHICAGO, OFFICER | ) | |
| RANITA MITCHELL, and OFFICER | ) | |
| HERMAN OTERO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Keith Smith sued the City of Chicago and two Chicago Police Officers—Defendants Ranita Mitchell and Herman Otero—under 42 U.S.C. § 1983 alleging constitutional violations from his September 2013 arrest, detention, and the legal proceedings that followed. (Dkt. 1). Defendants seek for a more definite statement under Federal Rule of Civil Procedure 12(e) and have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 16). For the reasons explained below, Defendants' Motion for a More Definite Statement is denied and their Motion to Dismiss is granted.

**BACKGROUND**

The following facts are taken from Smith's Complaint and are presumed true for the purpose of reviewing the Motion to Dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). While Smith was riding as a passenger in a vehicle on September 10, 2013, Officers Mitchell and Otero stopped the vehicle, searched it, and arrested Smith. (Dkt. 1) at ¶ 5. (Smith does not bring any claims for unlawful search, seizure, or false arrest.) Afterwards, Officers Mitchell and Otero decided to frame Smith "for criminal offenses to cover up their wrongful conduct." *Id*. at ¶ 6. Specifically, they created the false story

1

that Smith had made a "furtive movement" in the car and that they found a bullet in the car. *Id.* at ¶¶ 6–8. Another reason that the officers created the false story and fabricated evidence was to act in line with the "code of silence" among Chicago Police Officers. *Id.* at ¶ 12. Smith alleges that the City knew of and encouraged the "code of silence," which acted as a way to cover up police misconduct. *Id.* He alleges that the "'code of silence' was another cause of the conduct of Defendants Mitchell and Otero because they acted pursuant to the 'code of silence' when they concocted their false story and fabricated evidence." *Id.* at ¶ 15. Officers Mitchell and Otero thereafter made official reports and statements to prosecutors that contained their false story. As a result, Smith was detained at the Cook County Jail until he was released on bond in March 2014. *Id.* at ¶ 10. Smith's case eventually went to trial in July 2016 and he was "exonerated." *Id.* at ¶ 11. Smith has brought this suit alleging that the Defendants' actions violated his Fourth and Fourteenth Amendment rights. *Id.* at ¶ 16.

## LEGAL STANDARD

A motion for a more definite statement is appropriate if a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). Upon a motion that points to the purported defects and the details desired, the court may order the filing of a more definite statement. In considering such a motion, a court should be mindful of the liberal pleading requirements of the Federal Rules of Civil Procedure, pursuant to which a "short and plain statement of the claim" will suffice. Fed. R. Civ. P. 8(a)(2). Rule 12(e) is intended to strike "unintelligibility rather than want of detail." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 917 (N.D. Ill. 2016) (citation omitted).

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. In evaluating a Rule 12(b)(6) motion, the Court "'accept[s] as true all of the well-pleaded facts in the complaint

and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss, a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). While specific facts are unnecessary, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court reads the complaint and assesses its plausibility as a whole. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## ANALYSIS

### I.     Motion for More Definite Statement

Defendants first request that the Court dismiss the Complaint and order Smith to file an amended complaint that pleads all of his claims in separate counts. (Dkt. 17) at 3–4. But "[a]lthough it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) (emphasis added). That is, the Rules do not forbid the plaintiff to include multiple legal claims in a single count. Indeed, under Rule 8(d)(2) parties may state alternate or inconsistent claims in a single count. Although Smith has not explicitly noted all of the claims contained in his Complaint with headings and other signifying language or format, his Complaint unambiguously brings claims for being wrongfully detained by way of Defendants' actions. In addition, Smith explicitly states that his Complaint does not bring any claims for unlawful search, seizure, or arrest. With this groundwork in place, Smith's Complaint is at least

comprehensible and not so vague or ambiguous as to preclude a reasonable response, as is already indicated by Defendants' Answers (Dkts. 28, 29) and Motion to Dismiss. (Dkts. 16, 17). The Complaint does not violate the Federal Rules of Civil Procedure.

## II. Motion to Dismiss

Section 1983 provides an avenue for vindicating federal rights impaired by state actors, but since it does not create any substantive rights in and of itself, a plaintiff must first identify the underlying constitutional right at issue. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Smith raises Fourth and Fourteenth Amendment claims on account of the Officers' action of fabricating evidence (that is, the false narrative about the furtive movement and observed bullet), which caused him to be wrongfully detained.

A plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential claims. As established in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), a person has a Fourth Amendment right not to be detained based solely on false evidence rather than probable cause. That right extends not just to the time a person spends detained prior to the commencement of legal process (*i.e.*, arraignment) but also to his post-legal-process pretrial detention—"when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id*. at 918–20. At some point after arrest and certainly by the time of trial, "the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Id*. at 920 n.8; U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."). Because the Complaint generally states that Defendants violated Smith's Fourth and Fourteenth

Amendment rights by way of the single harm of detention and because it fails to contain any allegations regarding the legal process provided on Smith's case or that would otherwise allow for delineation between these two claims, the Court will analyze them together.  Although, notably, as currently alleged and for reasons discussed below, Smith's claims appear to arise under the Fourth Amendment.

### A.    Fourth and Fourteenth Amendment Claim for Wrongful Detention

Defendants move to dismiss Smith's wrongful detention claim for two reasons:  state law offers an adequate remedy to Smith on his claim, which is essentially one for malicious prosecution; and the claim is time-barred.  (Dkt. 17) at 4–9.  The Court addresses each argument in turn.

### 1.    Legal Viability of the Claim

It is well-established that a violation of state law does not preclude a finding that the federal Constitution has also been violated.  *Armstrong v. Daily*, 786 F.3d 529, 542 (7th Cir. 2015).  Defendants' argument that Smith's claim is merely an improperly re-cast state-law claim for malicious prosecution is based primarily on the Seventh Circuit's decision in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) and its progeny.  *See* (Dkt. 17) at 4–6; *Brooks v. City of Chicago*, 564 F.3d 830 (7th Cir. 2009); *Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010).  For example, *Newsome* involved a § 1983 claim brought by a man who had served 15 years in prison for a murder he did not commit.  He sued five Chicago Police Department officers, including two that he alleged, among other things, failed to disclose that they fabricated evidence by coaching witnesses to select the plaintiff's picture from a lineup despite their earlier identifications from a book of mug shots that did not contain his photo.  *Newsome*, 256 F.3d at 749.  The plaintiff brought a federal due process claim sounding in malicious prosecution against the officers for their failure to halt his

criminal prosecution. *Id*. But the Seventh Circuit held that there was no federal constitutional tort for malicious prosecution when such a claim existed under the relevant state law. *Id*. at 750. Notably, the plaintiff in *Newsome* was unable to bring a claim against the officers for unlawful arrest and detention. *Id*. at 749; *see Brooks*, 564 F.3d at 833 (alleged deprivation "of fair criminal proceedings" by way of fabricated evidence and other things did not state a due process claim).

Since *Newsome*, however, the Seventh Circuit has clarified that although there is no "free-standing constitutional tort of malicious prosecution, [] there are other constitutional rights (*e.g.*, such as those under the Due Process Clause and the Fourth Amendment) that protect people against abusive arrests, fabrication of evidence, etc." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018); *see also Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013) ("[T]here is no such thing as a constitutional right not to be prosecuted without probable cause. Thus, [a plaintiff] must allege something else that does amount to a constitutional violation (even if he calls it malicious prosecution)."). "Wrongful arrest or detention creates a wrongful-seizure claim, plain and simple, and the constitutional objection is to wrongful custody rather than to a criminal prosecution." *Stone v. Wright*, 734 F. App'x 989 (7th Cir. 2018) (citing *Manuel v. Joliet*, — U.S. —, 137 S. Ct. 911, 917–20 (2017)). In other words, "the wrong is the detention rather than the existence of criminal charges." *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018).

Accordingly, a claim for unlawful pretrial detention based on fabricated evidence appropriately may be brought pursuant to the Fourth Amendment, *see Manuel*, 137 S. Ct. at 917; it may also "may state a colorable due-process claim." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016); *see Armstrong*, 786 F.3d at 551 (citing *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (defining the right at issue as "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity")); *Petty v. City*

6

*of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014) (recognizing that manufactured evidence is capable of violating a defendant's due process rights); *see also Carter v. City of Chicago*, 2018 WL 1726421, at *4 (N.D. Ill. Apr. 10, 2018) ("There can be no doubt that the use of fabricated evidence to deprive a defendant of liberty violates the Fourteenth Amendment."). "[A] police officer who manufactures false evidence against the criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012); *see also Hurt*, 880 F.3d at 844 (this type of due process claim can be based on false police reports).

That is exactly what Smith has alleged here: he was wrongfully detained in custody for seven months and on bond for more than two years awaiting trial on account of the arresting officers' fabricated reports. *See* (Dkt. 1) at ¶ 10; *see also* (Dkt. 21) at 5 ("Plaintiff also alleges a deprivation of liberty: he was held at the Cook County Jail for seven months . . . and then remained subject to the conditions of bond until he was exonerated at trial."). He does not simply complain about being prosecuted; in fact, his Complaint does not mention his trial or even the charges that were brought against him. *See generally* (Dkt. 1). Therefore, his claim is not a disguised state-law malicious prosecution claim. Accordingly, Smith's claim for continued detention for seven months following his arrest based on fabricated or false evidence appropriately may support a claim under the Fourth or Fourteenth Amendment. *Manuel*, 137 S. Ct. at 918–20; *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) (Due Process Clause forbids the state from depriving a person of liberty (including by pre-trial detention) based on manufactured evidence); *see also Saunders-El v. Rhode*, 778 F.3d 556, 560 (7th Cir. 2015) (explaining that *Newsome*, *Fox*, and *Brooks* confirmed only that malicious prosecution claims—that is, claims premised on the initiation of criminal proceedings without probable cause—could not be pursued under § 1983

7

where state law provides a tort remedy; due process claims premised on post-arrest deprivations of liberty are a different animal and "[n]one of these decisions—individually or as a collection— stands for the proposition that fabricating evidence does not violate a defendant's due process, actionable pursuant to § 1983"); *see also Myvett v. Heerdt*, 232 F. Supp. 3d 1005, 1019 (N.D. Ill. 2017) ("[A] due process claim will lie when fabricated evidence is used to deprive a criminal defendant of liberty, even when the prosecution of that defendant is ultimately unsuccessful.").

However, the more than two years that Smith spent on pre-trial release on bond presents a different analysis. Smith argues in his Response Brief that he remained in wrongful custody or seized while on bond (*see* (Dkt. 21) at 7), but his Complaint does not contain any allegations concerning constitutional deprivations endured by Smith while on bond and the caselaw he cites in support of this premise is from other Courts of Appeals and therefore not precedential. To the contrary, the Seventh Circuit has said on multiple occasions that a criminal defendant who is released on bond and later acquitted at trial does not suffer a liberty deprivation for purposes of alleging a claim under the due process clause of the Fourteenth Amendment. *See Cairel v. Alderden*, 821 F.3d 823, 831 (7th Cir. 2016) (plaintiffs' evidence-fabrication due process claims foreclosed by the fact that plaintiffs "were quickly released on bond following their arrests"); *Bianchi*, 818 F.3d at 316, 320 (7th Cir. 2016) (plaintiffs "suffered no liberty deprivation . . . [and therefore] no due-process violation" because they "were arrested and immediately released on bond"); *Saunders-El*, 778 F.3d at 561 ("Saunders-El, released on bond following his arrest and acquitted at trial, . . . cannot make out an evidence fabrication-based due process violation."); *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012) (holding that the manufacturing of false evidence resulting in the plaintiff's arrest and charges being brought against him did not deprive him of a liberty interest because he was released on bond and later acquitted at trial; distinguishing

pre-trial release on bond, which is not a deprivation of liberty, from pre-trial confinement, which

is). Simply put, "even when the prosecution uses fabricated evidence at trial, the defendant's due

process claim is wiped away if he is released on bond and then acquitted." *Holmes v. Curran*,

2018 WL 2933648, at *2 (N.D. Ill. June 12, 2018). This is because "the need to appear in court

and attend trial does not constitute such a deprivation" of liberty. *Cairel*, 821 F.3d at 831; *see also*

*Alexander*, 692 F.3d at 557 n.2 ("It would be anomalous to hold that attending a trial deprives a

criminal defendant of liberty without due process of law, when the purpose of trial is the *effectuate*

due process.") (emphasis in original).

This same logic applies with equal force to Smith's Fourth Amendment continuing-seizure

theory, particularly in the absence of any allegations whatsoever regarding Smith's conditions of

bond. *See, e.g.*, *Townsend v. Wilson*, 652 F. App'x 449, 453 (7th Cir. 2016) ("because Townsend

was released on bond the morning after his arrest and was not detained after charges were filed,

he did not suffer a Fourth Amendment injury that would support a claim of malicious

prosecution"); *Alexander*, 692 F.3d 553, 557 n.2 ("run-of-the-mill conditions of pretrial release . .

. do not constitute Fourth Amendment seizure") (quoting *Harrington v. City of Nashua*, 610 F.3d

24, 32–33 (1st Cir. 2010)); *cf. Banton v. Dowds*, 2007 WL 2772515, at *11 (C.D. Ill. Sept. 19,

2007) (leaving open the possibility that certain bond conditions may be so restrictive that they

constitute a "seizure" under the Fourth Amendment, but concluding that the allegations in that case

did not rise to such a level). In sum, the Court concludes that the only wrong at issue for purposes

of Smith's wrongful detention claim is the seven months he spent at the Cook County Jail.

### 2.    Timeliness

Defendants' second dismissal argument is that Smith's claim is untimely. Because § 1983

does not contain a statute of limitations, the court looks to the law of the state where the injury

occurs to determine the appropriate limitations period. In Illinois, the limitations period is two years. 735 ILCS 5/13-202. In addition, federal law governs accrual questions. *Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018). Generally, a § 1983 claim begins to accrue when the plaintiff has a "complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citation and quotation omitted).[1]

Smith filed the instant action on July 18, 2018, meaning that his claim in untimely if it accrued before July 18, 2016. The Complaint allegations make clear that only one event occurred within the applicable timeframe: Smith's July 21, 2016 exoneration at trial—the date the criminal proceedings were terminated in his favor. (Dkt. 1) at ¶ 11. Instead of using that date as the accrual date, Defendants allege that Smith's evidence fabrication claim accrued on September 10, 2013, when he was arrested. *See* (Dkt. 17) at 7. Because Smith is challenging his prolonged detention based on the allegedly fabricated evidence, Defendants' theory of accrual is plainly incorrect. However, as discussed above, Smith's challenge applies only to the time he actually spent in custody, not to the two years he was on bond. What the cases cited above indicate then is that Smith's claim of wrongful detention accrued at the time his custodial detention ceased. In other words, he properly alleges that the fabricated evidence caused him a constitutional harm insofar as it caused him to be wrongfully detained. He does not (and cannot) properly allege that it caused him any constitutional harm at trial, where he was not convicted. The wrong is his detention and

---

[1] Under *Heck v. Humphrey*, a claim that implies the invalidity of a conviction does not accrue until the conviction has been invalidated. 512 U.S. 477, 486–87 (1994). Thus, under *Heck*'s deferred accrual rule, the statute of limitations is tolled for a *Heck*-barred claim until the conviction has been set aside. *See Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) ("*Heck* holds that a claim that implies the invalidity of a criminal conviction does not accrue, and the statute of limitations does not begin to run, until the conviction is set aside by the judiciary or the defendant receives a pardon."). The *Heck* rule of deferred accrual comes into play only when a conviction or sentence is outstanding. *Wallace*, 549 U.S. at 393. Since the Complaint is clear that Smith was never convicted or sentenced, the *Heck* rule of deferred accrual is inapplicable in this case.

as Smith argues, "the majority rule is that the claim does not accrue until the wrong ceases." (Dkt. 21) at 6. The wrong ceased when Smith was released from the Cook County Jail on bond in March 2014. (Dkt. 1) at ¶ 10. Therefore, he needed to bring this action by March 2016 for it to be considered timely. But Smith filed this action on July 18, 2018, more than four years after the clock began to run on his claim, so it is time-barred.

Smith attempts to save his claim by arguing that a fabrication of evidence claim accrues on the "favorable termination" of criminal proceedings—the July 21, 2016 exoneration date within the limitations period. *See* (Dkt. 21) at 5–6 (citing *Floyd v. Attorney General*, 722 F. App'x 112, 114 (3d Cir. 2018) (*per curiam*); *Castellano v. Fragozo*, 352 F.3d 939, 959–960 (5th Cir. 2003) (*en banc*); *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017); *Bradford v. Scherschligt*, 803 F.3d 382, 387–389 (9th Cir. 2015); *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008)). But Smith's argument is inconsistent with the Seventh Circuit's recent holding in *Manuel v. City of Joliet, Ill.* regarding the Fourth Amendment claim presented there. As relevant, in *Manuel*, the plaintiff was ordered to remain in custody pending trial. On May 4, 2011 while he was still in custody, the charges against him were dismissed; he was released from detention the following day, May 5, 2011. 903 F.3d at 669. The parties litigated the accrual issue before the Supreme Court, where the plaintiff argued that the Fourth Amendment claim accrues "only upon the dismissal of criminal charges." *Manuel*, 137 S. Ct. at 921. In contrast, the City argued that any Fourth Amendment claim accrues on the date of the initiation of legal process. *Id*. The Supreme Court declined to decide the issue, although in so declining, the Court noted that "all but two of the ten Courts of Appeals that have recognized a Fourth Amendment claim like his have incorporated a 'favorable termination' element and so pegged the statute of limitations to the dismissal of the criminal case." *Id*. On remand, the Seventh Circuit explicitly refused to use May

4—the day the charges were dismissed or the date of "favorable termination"—as the accrual date, because the Supreme Court had "deprecated the analogy [of the Fourth Amendment claim] to malicious prosecution." *Manuel*, 903 F.3d at 670. Instead, the Seventh Circuit held that "[b]ecause the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention." *Id*. Thus, Manuel's claim accrued on May 5.

The distinction drawn in *Manuel* between the date the detention ceased and the date of favorable determination made little difference on the facts of that case, but here it is the difference between a timely and an untimely claim. Smith was detained for seven months and then released on bond pending trial, and his criminal charges were not resolved until more than two years after his release from custodial detention. Following the Seventh Circuit's directive, the Court finds that the constitutional claim presented by Smith here—under either the Fourth or Fourteenth Amendment—accrued when his detention ended in March 2014. Not only does this result follow the applicable precedent, it makes sense because Smith has not alleged that any of the fabricated evidence was used at trial or for purposes other than securing his pre-trial detention. And again, to the extent Smith complains that such evidence generally was used to prosecute him, as explained above, such a claim is not tied to a constitutional harm and therefore cannot be framed as a Fourth or Fourteenth Amendment claim. To be fair, filing suit within the limitations period could have put Smith in an awkward situation if the allegedly fabricated evidence used to justify his detention also was trial evidence (but again, that is not alleged here). Still, although an earlier brought case may have been stayed, Smith's constitutional claim for unlawful detention accrued upon his release in March 2014. To hold otherwise would inappropriately cross the line into creating a constitutional tort for malicious prosecution. To the extent that Smith had or has a state-law

malicious prosecution claim, which he has not raised here, he is correct that any such claim accrued upon his acquittal.

Finally, Smith mentions a pending appeal in *Lewis v. City of Chicago*, No. 17-1510 (7th Cir.), which involves the accrual of Fourteenth Amendment evidence fabrication claims. But a ruling has not yet been issued in that case, and the Court instead follows the available and applicable precedent of *Manuel*. Regardless, the position advocated for by the appellant in that case is the same as applied here: "The accrual rule the Court applied to the Fourth Amendment claim in *Manuel* is fully applicable to appellant's Fourteenth Amendment Due Process Clause claim that he was deprived of liberty based on fabricated evidence. Like the Fourth Amendment claim, the Due Process Clause claim rests on the wrong of detention." *See Lewis v. City of Chicago*, No. 17-1510 (Dkt. 44) (7th Cir. Sept. 28, 2018) (FRAP 28(j) filing by Appellant). Thus, a result in favor of the appellant in that matter would be consistent with the reasoning applied here.

Although the statute of limitations is an affirmative defense that need not be anticipated in the complaint to survive a motion to dismiss, *see United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005), in the instant case Smith has pled himself out of court by pleading facts that establish an impenetrable defense to his claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Because "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense" and nothing suggests that a tolling argument is somehow applicable, the Court dismisses the Fourth and Fourteenth Amendment claim as precluded by the statute of limitations. *Lewis*, 411 F.3d at 842; *see Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (granting motion to dismiss based on statute of limitations defense where the relevant dates were set forth unambiguously in the complaint); *see also Collins v. Vill. of Palatine, Ill*., 875 F.3d 839, 842 (7th Cir. 2017) ("Although the statute of limitations is an affirmative defense, dismissal under Rule

13

12(b)(6) of the Federal Rules of Civil Procedure is appropriate if the complaint contains everything necessary to establish that the claim is untimely.").

### B.      § 1983 Conspiracy

For a § 1983 conspiracy claim, Smith must allege that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1075 (N.D. Ill. 2018) (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)). But as discussed above, Smith's claim for unlawful detention is untimely, and thus any claim for § 1983 conspiracy based on the same allegations necessarily fails.

### C.      *Monell* Claim

Smith's *Monell* claim against the City appears to be based on the "code of silence," and he alleges that the "code of silence" is a widespread practice or custom of the City that the City knows about and encourages. (Dkt. 1) at ¶¶ 12–13. As a municipality. the City is subject to § 1983 liability under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690); *see Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (*en banc*) ("The critical question under *Monell* . . . is whether a municipal policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents.").

Here again, because Smith's unlawful detention claim fails, so does his *Monell* claim. Even if he had stated a viable constitutional violation, his *Monell* claim would fail because it does not

plausibly allege that the "code of silence" caused his constitutional injury nor does he allege pervasive misconduct. With regard to causation, his "code of silence" allegations are brief and circular: the "code of silence" caused Officers Mitchell and Otero to do what they did because they acted pursuant to the "code of silence." (Dkt. 1) at ¶ 15. Moreover, even if Smith had properly alleged causation, his *Monell* claim still would fail because he has alleged only one isolated incident of misconduct. *See, e.g.*, *Carmona v. City of Chicago*, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018) (in determining whether a plaintiff has pled a widespread practice in a *Monell* claim, the court looks to the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom). In other words, his allegations about the existence of the "code of silence" are generally stated and his only specific allegation about the "code of silence" at play in this case is that Officers Mitchell and Otero acted pursuant to it. (Dkt. 1) at ¶¶ 12–15. These allegations do not lead to an inference of pervasive or widespread misconduct, either in fabricating evidence or ignoring misconduct.

## <u>CONCLUSION</u>

For the reasons outlined above, Defendants' Rule 12(e) motion is denied and Defendants' Rule 12(b)(6) motion is granted. (Dkt. 16). Smith's Complaint is dismissed with prejudice.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: January 3, 2019

ILND 450 (Rev. 10/13) Judgment in a Civil Action

Case: 1:18-cv-04918 Document #: 38 Filed: 01/03/19 Page 1 of 1 PageID #:137
Case: 19-2725     Document: 15          Filed: 02/12/2020      Pages: 77

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Keith Smith,

Plaintiff(s),

v.

City of Chicago, Ranita Mitchell and Herman
Otero,

Defendant(s).

Case No.  18 C 4918
Judge Virginia M. Kendall

## <u>JUDGMENT IN A CIVIL CASE</u>

Judgment is hereby entered (check appropriate box):

☐     in favor of plaintiff(s)
and against defendant(s)
in the amount of $     ,

         which ☐ includes      pre–judgment interest.
                 ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒     in favor of defendant(s) City of Chicago, Ranita Mitchell and Herman Otero
and against plaintiff(s) Keith Smith

. Defendant(s) shall recover costs from plaintiff(s).

---

☐     other:

---

This action was *(check one)*:

☐ tried by a jury with Judge     presiding, and the jury has rendered a verdict.
☐ tried by Judge     without a jury and the above decision was reached.
☒ decided by Judge Virginia M. Kendall on a motion to dismiss

Date:  1/3/2019               Thomas G. Bruton, Clerk of Court

                             /s/Lynn Kandziora , Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KEITH SMITH, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No.  18 C 4918 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| CITY OF CHICAGO, OFFICER | ) | |
| RANITA MITCHELL, and OFFICER | ) | |
| HERMAN OTERO, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Keith Smith moves pursuant to Federal Rule of Civil Procedure 59 seeking the Court to reconsider its Order granting Defendants' Motion to Dismiss under Rule 12(b)(6).  Plaintiff argues the Seventh Circuit's ruling in *Mitchell v. City of Elgin*, 912 F.3d 1012 (7th Cir. 2019) represents an "intervening and substantial change in the controlling law" compelling the Court to reconsider its Order dismissing his Complaint with prejudice.  (Dkt. 39, at ¶ 2).  For the reasons stated within, Plaintiff's Motion to Reconsider is granted.

## BACKGROUND

Plaintiff's Complaint alleged that his detention by the City of Chicago violated 42 U.S.C. § 1983, depriving him of his Fourth and Fourteenth Amendment rights. (Dkt. 1, at ¶ 16).  Specifically, Plaintiff alleged that Defendants Mitchell and Otero, Chicago Police Officers, used falsified evidence to justify his detention following a

traffic stop in September of 2013 where Smith was a passenger in the stopped vehicle. (Dkt. 1, at ¶¶ 5, 6). Following the arrest, Plaintiff was held in custody in the Cook County Jail until March of 2014 when he was ultimately released on bond. (Dkt. 1, at ¶ 10). Plaintiff was later "exonerated" at trial in July of 2016. (Dkt. 1, at ¶ 11). He filed the instant Complaint in July of 2018. (Dkt. 1).

The Court granted Defendants' Motion to Dismiss the Complaint, finding it untimely under the two-year statute of limitations. (Dkt. 37, at 13–14). The Court held the alleged Constitutional deprivation ended at Plaintiff's release from custodial detention in March of 2014 rather than at trial in July of 2018. (Dkt. 37, at 12). Plaintiff filed the instant Motion for Reconsideration, arguing the Seventh Circuit's decision in *Mitchell* supports the claim that Smith remained "seized" under the conditions of his bond until trial and, therefore, the Complaint was filed within the requisite two-year statute of limitations. (Dkt. 39, at ¶¶ 8–10).

## LEGAL STANDARD

A motion to reconsider is appropriate when there is a "controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). In light of the intervening authority, the original decision must represent a "manifest error of law" or a "wholesale disregard, misapplication, or failure to recognize controlling precedent*." Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "Such problems rarely arise and the motion to reconsider should be equally rare." *Waunakee*, 906 F.2d at 1190 (internal quotation omitted).

## **DISCUSSION**

A.    **§ 1983 Wrongful Detention**

Plaintiff argues that the Seventh Circuit's decision in *Mitchell* represents intervening case law regarding the accrual of a Fourth Amendment violation for wrongful detention during pre-trial release.  (Dkt. 39, at 2) (*citing* 912 F.3d at 1017).  The *Mitchell* court reversed the dismissal of a similar § 1983 complaint because it lacked "sufficient information about [the plaintiff's] conditions of release to determine if she remained 'seized' while on pretrial release."  *Id*.  The court recognized that there is no guiding factual threshold for a pre-trial release deprivation of liberty stating, "[w]hether pretrial-release conditions satisfy [the Fourth Amendment seizure] standard . . . will have to be resolved in this circuit."  *Id*.  In response, Defendants argue that *Mitchell* did not overrule cases relied upon in the Court's original Order and, as mere dicta, it does not compel reconsideration.  (*See generally*, Dkt. 42).

In its Order on Defendants' Motion to Dismiss, the Court recognized that "a claim for unlawful pretrial detention based on fabricated evidence appropriately may be brought pursuant to the Fourth Amendment."  (Dkt. 37, at 6) (*citing Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018)).  However, the Court held the Complaint failed as a matter of timeliness because, at the statutory time limit, the seizure was that of bond release and not of custodial detention. (Dkt. 37, at 9).  The Court followed the precedent of *Cairel v. Alderden (*821 F.3d 823, 831 (7th Cir. 2016)), where due process claims failed for lack of constitutional deprivation because the plaintiffs were released on bond and then never brought to trial.  (Dkt. 37, at 8).  The

court in *Cairel* also stated that even if the bond release had culminated in a trial, there would have been no actionable deprivation of liberty. 821 F.3d at 832.

*Mitchell* represents potential intervening authority on whether conditions of pre-trial bond release can constitute a "continuing seizure" for Fourth Amendment purposes. 912 F.3d at 1017. The *Mitchell* court recognized a circuit court split on the issue with a minority of circuits holding that a mere obligation to appear at court represents a seizure (*see, e.g., Black v. Montgomery County*, 835 F.3d 358, 366–67 (3d Cir. 2016)) and the majority of circuits requiring more restrictive conditions before finding a seizure exists. *See, e.g., Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999) (travel restrictions and intrusive monitoring during bond release amounted to a deprivation of liberty). The *Mitchell* court was not presented with facts describing the conditions of the plaintiff's pre-trial bond release and declined to take a position on either side of the circuit split. 912 F.3d at 1017. Rather, the court stated that the issue of continuing seizure remained an open question in both this circuit and the case before it and remanded the case for further fact finding. *Id.*

Similar to *Mitchell*, the Court in the instant case was not presented with the conditions of pre-trial release that allegedly constituted Smith's seizure. The question, then, is whether the *Mitchell* decision, by remanding a case amidst precedential and factual ambiguity, represents "intervening law" to the standard necessary for Rule 59 reconsideration. Defendants argue the *Mitchell* decision does not represent intervening law because it is mere dicta and does not explicitly overrule any case law that the Court relied upon. (Dkt. 42, at 11). Defendants cite as support this Court's

decision in *Caine v. Burge*. (Dkt. 42, at 4) (*citing* 897 F. Supp. 2d 714, 719 (N.D. Ill. 2012)). In *Caine*, this Court did not accept as intervening law, a Seventh Circuit decision which offered persuasive reasoning for reconsideration yet fell short of overruling a decision dispositive to its original motion. 897 F. Supp. 2d at 719. Conversely, in *Kathrein v. City of Evanston*, the court found that intervening law justified a departure from the law of the case doctrine where an *en banc* panel decision "alter[ed] the law" but did not expressly overrule case law dispositive to the lower court's decision. 752 F.3d 680, 686 (7th Cir. 2014).

The Court is not aware of any binding precedent supporting the notion that intervening law, for the purpose of reconsideration, is limited to decisions explicitly overruling relevant cases. This Court's decision in *Caine* did not suggest such a rule. In *Caine*, there existed binding case law which *needed* to be overruled in order to grant the motion to reconsider. 897 F. Supp. 2d at 717. Though persuasive, the intervening decision presented in *Caine* failed to overrule law governing the Court's original decision and, therefore, failed to compel reconsideration. *Id.* at 718.

In the instant case, it is unnecessary that *Mitchell* overrule *Cairel* because *Mitchell* addresses a precedential ambiguity that is not addressed by *Cairel* or the Seventh Circuit. *Cairel* and similar cases simply held that conditions of pre-trial release in their respective cases did not amount to a continuing seizure. *Cairel*, 821 F.3d at 832. They did not purport to create a rule that conditions of pre-trial release may never represent a seizure. *Mitchell* highlighted the "possibility that pretrial re-

lease might be construed as a 'seizure' for Fourth Amendment purposes if the conditions of that release impose significant restrictions on liberty." 912 F.3d at 1016. Therefore, *Mitchell* did not overrule *Cairel*; rather it introduced a novel theory of Fourth Amendment deprivation potentially applicable to the present case.

If the Court had been aware of the *Mitchell* court's interpretation of pre-trial seizure at the time of its Order, it would have recognized that the Complaint presented a potentially viable legal theory. However, because the Complaint fails to allege any facts describing what conditions of pre-trial release amounted to a seizure, the Complaint would have nonetheless failed for insufficient pleading. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (a pleading must allege sufficient facts to state a claim plausible on its face). Therefore, the *Mitchell* decision compels the Court to reconsider its decision, though only to extent of removing prejudice from the dismissal. Plaintiff will be permitted the opportunity to amend his pleading to allege facts relating to his pre-trial seizure.

Because the dismissal of the conspiracy claim was similarly dependent on the timeliness of the underlying § 1983 claim, Plaintiff will have the opportunity to re-plead this Count.

### B.  *Monell* Claim

Plaintiff's *Monell* claim was dismissed with prejudice because of the underlying timeliness issue, but the claim also failed for insufficient factual pleading. (Dkt. 37, at 15). The Court held the Complaint failed to plausibly allege both the existence of pervasive misconduct by the City and causation of the injury by the City's customs

or policies. (Dkt. 37, at 14–15). The reconsideration of the timeliness issue removes the necessity to dismiss the claim with prejudice while the pleading deficiency persists. Therefore, Plaintiff is granted leave to amend the *Monell* claim.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Reconsider is granted. Plaintiff will have 28 days to amend his Complaint to address the persisting deficiencies noted above and in the Court's prior Order.

Virginia M. Kendall
United States District Judge

Date: April 30, 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KEITH SMITH,                          )
                                      )
        *Plaintiff,*                  )
                                      )
                                      )   No.  18 C 4918
    v.                                )
                                      )   Judge Virginia M. Kendall
CITY OF CHICAGO, OFFICER              )
RANITA MITCHELL, and OFFICER          )
HERMAN OTERO,                         )
                                      )
        *Defendants.*                 )
                                      )

## MEMORANDUM OPINION AND ORDER

After the Court granted his Motion to Reconsider (Dkt. 39), Plaintiff Keith

Smith timely filed his Amended Complaint[1].  The Amended Complaint brings claims

of fabricated evidence and conspiracy, along with a *Monell* claim against the City of

Chicago pursuant to 42 U.S.C. § 1983.  (Dkt. 45).  The fundamental question before

the Court is whether Plaintiff's conditions of bond were so substantial as to be

considered a seizure, thus prolonging the accrual date of for his constitutional claims.

After review of Plaintiff's newly pled allegations, the conditions of bond Plaintiff was

subjected to were not sufficiently burdensome to be considered a seizure.  The

controlling statute of limitations expired in March of 2016, two years after he was

---

[1] Plaintiff titled his Amended Complaint as "Second Amended Complaint" when filing on the Court's docket.  (Dkt. 45).  Seeing as this is the first time Plaintiff has amended his complaint, the Court will refer to the operative pleading as the Amended Complaint throughout this Opinion.

released from Cook County Jail. Accordingly, Defendants' Motion to Dismiss is granted and Plaintiff's Amended Complaint is dismissed with prejudice.

## BACKGROUND

The Court is well aware of, and assumes familiarity with, the facts alleged in Plaintiff's Complaint and his Amended Complaint based upon the Court's ruling on the first motion to dismiss (Dkt. 37) and Plaintiff's subsequent motion to reconsider (Dkt. 44). The well pleaded facts in Plaintiff's Amended Complaint are presumed as true for purposes of reviewing the instant Motion to Dismiss. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).

Briefly, Plaintiff was a passenger in a vehicle that Defendants Mitchell and Otero stopped and searched on September 10, 2013. (Dkt. 45, ¶ 5). Plaintiff was arrested as a result, but "does not assert any claim of unlawful search, seizure, or false arrest." *Id.* Plaintiff alleges that Defendants Mitchell and Otero conspired to produce a fabricated police report which led to Plaintiff's detention in Cook County Jail for seven months. (*Id.* at ¶¶ 6-10). Plaintiff was released on bond on March 29, 2014 and was required to appear at court hearings and seek permission from the court before leaving Illinois. (*Id.* at ¶¶ 10-12).

On July 21, 2016, Plaintiff was found not guilty. (*Id.* at ¶ 15). Plaintiff then filed his original complaint on July 18, 2018. (Dkt. 1). This Court dismissed Plaintiff's complaint as barred by the two-year statute of limitations because his claim for unlawful detention accrued at the time he was released from custody on March 29, 2014. (Dkt. 37). Following the Court's ruling, Plaintiff filed a motion to

reconsider based on the potential intervening authority of *Mitchell v. City of Elgin,* 912 F.3d 1012 (7th Cir. 2019). The *Mitchell* court wrote that conditions of bond *could* potentially constitute a continuing seizure. However, the exact parameters of Mitchell's bond were not before the court so the matter was remanded for further fact-finding. *Mitchell,* 912 F.3d at 1017. As was the case with *Mitchell,* the conditions of bond were not before this Court at the time it ruled on Defendants' first motion to dismiss. Therefore, Plaintiff's motion to reconsider was granted and Plaintiff was permitted to file an amended complaint alleging the conditions of bond. (Dkt. 44).

Plaintiff filed his Amended Complaint on May 27, 2019 with new allegations detailing the conditions of his bond. Specifically, Plaintiff alleges that while on bond, he "was required to appear in court at the state's command, about once per month," "was subject to the condition that he seek formal permission from the court before exercising what would otherwise have been his unquestioned right to travel outside the State of Illinois," "experienced the financial and emotional strain of preparing a defense," and suffered from diminished employment prospects "because he had to appear in court about once each month." (Dkt. 45, ¶¶ 11-14).

## LEGAL STANDARD

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Twombly,* 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678.). "[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins,* 644 F.3d 577, 582 (7th Cir. 2011).

### DISCUSSION

## I. Fabrication of Evidence Claim

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff argues that Defendants violated his Fourth Amendment rights when they fabricated evidence which led to his wrongful pretrial detention. "[T]here *is* a constitutional right not to be held in custody without probable cause." *Manuel v. City of Joliet, Illinois,* 903 F.3d 667, 670 (7th Cir. 2018), *cert. denied sub nom. City of Joliet, Ill. v. Manuel,* 139 S. Ct. 2777 (2019) (emphasis in original). That right is grounded in the Fourth Amendment. *Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 920 (2017). "[A] Fourth Amendment claim for unlawful pretrial detention accrues when the *detention* ends, *not* when the *prosecution* ends." *Mitchell,* 912 F.3d at 1015 (emphasis in original). Once a claim accrues, plaintiffs have two years to seek relief. *Gekas v. Vasiliades,* 814 F.3d 890, 894 (7th Cir. 2016) ("The statute of limitations for § 1983 claims in Illinois is two years.").

There is no dispute that Plaintiff was released from the Cook County Jail on bond in March of 2014. However, Plaintiff argues that his wrongful detention did not end until he was acquitted on July 21, 2016—making the July 18, 2018 filing of his Complaint timely. He posits that the conditions of his bond amounted to a seizure and wrongful detention. The dispositive question is whether Plaintiff's conditions of bond constitute a seizure and necessarily delay the accrual of his Fourth Amendment claims.

Here, Plaintiff alleges just two conditions of his bond.[2] First, that he "was required to appear in court at the state's command, about once per month." (Dkt. 45, ¶ 11). And second, that he had to seek permission to leave the State of Illinois. (*Id.* at ¶ 12). These allegations, neither independently nor cumulatively, do not amount to a seizure. Elevating these bond conditions to the level of a Fourth Amendment seizure would fundamentally alter the understanding and structure of the pretrial system. *Bielanski v. Cty. of Kane,* 550 F.3d 632, 642 (7th Cir. 2008) ("To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim."); *see also Mitchell,* 912 F.3d at 1017 ("We have misgivings about construing a simple obligation to appear in court—a uniform condition of any pretrial release—as a 'seizure' for Fourth Amendment purposes. Converting every traffic ticket into a nascent Fourth Amendment claim strikes us as an aggressive reading of

---

[2] It is worth noting that Plaintiff also alleges that he suffered diminished employment prospects because he had to appear at monthly court hearings and suffered financial and emotional strain in having to prepare. These burdens are de minimis and not unique to individuals on pretrial detention, nor are they conditions of bond imposed by court order. Indeed, any defendant may suffer some sort of mental and emotional anxiety at the prospect of defending a case, but this is not inherently the result of conditions of bond.

the constitutional text."). In fact, the very conditions that Plaintiff now alleges have already been classified as insufficient to establish a Fourth Amendment seizure. "No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes. … Although the travel restriction and the interview with the probation officer might be somewhat more onerous than the summons alone, we conclude that they are insufficient restraints on freedom of movement to constitute a seizure." *Id.* With respect to the Plaintiff's confinement to the State of Illinois, the mere threat of a travel restriction is inadequate. "Such a requirement is, at most, a precursor to a possible seizure rather than a seizure itself." *Id.* Nowhere does Plaintiff allege he was ever actually denied permission to leave the state or that his obligation to attend a court hearing imposed a direct and specific hardship.

In order to reach the threshold of a Fourth Amendment violation, conditions of pretrial release must "impose *significant restrictions* on liberty." *Mitchell,* 912 F.3d at 1016 (emphasis added). Requiring Plaintiff to attend monthly court hearings and asking for permission to leave the state falls far short of that benchmark. *See e.g., Spring-Weber v. City of Chicago,* 2018 WL 4616357, at *12 (N.D. Ill. Sept. 26, 2018) ("Nor is there a seizure every time the government compels a person to be in a particular place. For instance, service of a summons to appear in court—even though it is backed by a court's power to hold the recipient in contempt and imprison her if she does not comply—does not amount to a seizure within the meaning of the Fourth Amendment."). Seizure concerns are simply not implicated with such minor and

routine restrictions are imposed on an individual's liberty. The primary focus is on physical detention or other conditions of near equivalent severity. *See e.g., Allen v. Utreras,* 2018 WL 8261309, at *1 (N.D. Ill. Nov. 9, 2018) ("[T]he Seventh Circuit was not concerned with the lesser freedom restrictions imposed on a person released on his own recognizance, but specifically with detention itself."); *Mayo v. LaSalle Cty.,* 2019 WL 3202809, at *5 (N.D. Ill. July 15, 2019) ("A requirement to appear somewhere simply does not fit within the Supreme Court's test for whether a seizure has occurred, which looks to whether a reasonable person would have believed he was free to leave. … Accordingly, the clock on [Plaintiffs'] pretrial detention claim started running when they were released from physical custody…").

Plaintiff suggests that the Supreme Court's recent decision in *McDonough v. Smith* has already resolved the accrual question and that in line with that ruling, his claims did not accrue until the criminal proceedings terminated in his favor. That is not the case as *McDonough* is meaningfully distinguishable. In *McDonough,* the plaintiff's fabricated evidence claim arose under the Due Process Clause of the Fourteenth Amendment. 139 S. Ct. 2149, 2155 (2019). Importantly, the purportedly fabricated evidence *was* used against McDonough at his trial. *Id.* at 2154. Here, Plaintiff's claim is explicitly brought under the Fourth Amendment and the allegedly fabricated evidence was *not* used against him at trial. As the Supreme Court highlighted, the Fourth and Fourteenth Amendments are fundamentally concerned with protecting distinct interests.

> [O]nce a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction

> and any ensuing incarceration does so under the Due Process Clause of
> the Fourteenth Amendment. … [T]he Framers drafted the Fourth
> Amendment to address the matter of pretrial deprivations of liberty …
> and the Amendment thus provides standards and procedures for the
> detention of suspects *pending trial*.

*Manuel,* 137 S.Ct. at 919 n.8 (internal quotations and citations omitted). Plaintiff

challenges the fabrication of evidence that led to his pretrial detention—not any

deprivation of liberty stemming from evidence presented at trial. Accordingly, the

Due Process Clause, and in turn *McDonough*, have no bearing when analyzing the

accrual date of Plaintiff's claims. *See Manuel,* 903 F.3d at 670.

Additionally, Plaintiff asks the Court to take notice of the pending en banc

hearing before the Seventh Circuit in *Savory v. Cannon*. (Dkt. 56). A review of

*Savory* reveals that it is similarly distinguishable and does not justify a different

result or that the Court must wait on the sidelines pending the outcome of the

hearing. The plaintiff in *Savory* did not bring a Fourth Amendment fabrication of

evidence claim. Instead, he brought claims of malicious prosecution, challenging the

fabricated evidence *used at his trial*. *Savory v. Cannon,* 912 F.3d 1030, 1032 (7th Cir.

2019), *reh'g en banc granted, opinion vacated* (Mar. 6, 2019). The issue of when a

Fourth Amendment claim for fabrication of evidence accrues was not before the

Seventh Circuit when it rendered its initial opinion and there is no indication that it

will be addressed at the en banc hearing. *Savory* is of no consequence for purposes of

analyzing Plaintiff's claims here. What the Seventh Circuit *has* clearly addressed is

that a claim like Plaintiff's accrues when the detention ends, not when the

prosecution is complete, *Mitchell,* 912 F.3d at 1015, and minor restrictions such as

requirements to attend court hearings and seeking permission before leaving the state do not extend detention for purposes of a Fourth Amendment claim. *Bielanski,* 550 F.3d at 642.

## II. Conspiracy and *Monell* Claims

Because Plaintiff's individual fabrication of evidence claim fails as untimely, so too must his corresponding conspiracy and *Monell* claims. Plaintiff agrees that the success or failure of his conspiracy and *Monell* claims are intertwined with the standalone fabrication of evidence claim. (Dkt. 50, pg. 5). In the absence of any substantive constitutional violation, a conspiracy claim necessarily fails. *Cefalu v. Vill. of Elk Grove,* 211 F.3d 416, 423 (7th Cir. 2000). Similarly, the untimeliness of the fabrication claim forecloses Plaintiff's ability to pursue his *Monell* claim. *Sallenger v. City of Springfield, Ill.,* 630 F.3d 499, 504 (7th Cir. 2010) ("But a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."). Thus, both are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. Plaintiff's claims accrued when he was released from custody in March of 2014. As a result, this action, filed more than four years after his release, is untimely pursuant to the two year statute of limitations. Plaintiff's Amended Complaint is dismissed with prejudice.

Virginia M.  Kendall
United States District Judge

Date: September 6, 2019

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN DISTRICT OF ILLINOIS

Keith Smith,

Plaintiff(s),

v.

City of Chicago, Ranita Mitchell, and Herman Otero ,

Defendant(s).

Case No.  18 C 4918

Judge Virginia M. Kendall

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

which ☐ includes          pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒    in favor of defendant(s) City of Chicago, Ranita Mitchell, and Herman Otero
and against plaintiff(s) Keith Smith

.

Defendant(s) shall recover costs from plaintiff(s).

---

☐    other:

---

This action was *(check one)*:

☐ tried by a jury with Judge          presiding, and the jury has rendered a verdict.
☐ tried by Judge          without a jury and the above decision was reached.
☒ decided by Judge Virginia M. Kendall on a motion to dismiss.

Date:  9/6/2019

Thomas G. Bruton, Clerk of Court

/s/ Lynn Kandziora  , Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Keith Smith,              ) | |
|           ) | |
|     *Plaintiff,*    ) | |
|           ) | |
|    *-vs-*      ) | No. 18-cv-4918 |
|           ) | |
| City of Chicago and Chicago  ) | *(Judge Kendall)* |
| Police Officers Ranita Mitchell  ) | |
| and Herman Otero,     ) | |
|           ) | |
|     *Defendants.*  ) | |

## SECOND AMENDED COMPLAINT

Plaintiff files this second amended complaint and, by counsel, alleges as follows:

1.    This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343.

2.    Plaintiff Keith Smith is a resident of the Northern District of Illinois.

3.    Defendants Chicago Police Officers Ranita Mitchell and Herman Otero were, at all relevant times, acting under color of their offices as Chicago police officers.

4.    Defendant City of Chicago is an Illinois municipal corporation.

5.    On September 10, 2013, defendants Mitchell and Otero unlawfully stopped and searched a vehicle in which plaintiff was a passenger

and then arrested plaintiff. Plaintiff does not assert any claim of unlawful search, seizure, or false arrest.

6.     Defendants Mitchell and Otero conspired, confederated, and agreed to frame plaintiff for criminal offenses.

7.     In furtherance of this conspiracy, defendants Mitchell and Otero concocted the false story that they had observed plaintiff, while a passenger in an automobile, make a furtive movement.

8.     Also in furtherance of this conspiracy, defendant Mitchell claimed to have found a bullet inside the vehicle.

9.     Defendants Mitchell and Otero memorialized this fabricated story in official police reports and criminal complaints and communicated the fabricated story to prosecutors.

10.     As a result of the wrongful conduct of defendants, plaintiff was held in custody at the Cook County Jail for seven months before being released on bond on or about March 29, 2014.

11.     Following his release on bond, plaintiff was required to appear in court at the state's command, about once per month.

12.     While on bond, plaintiff was subject to the condition that he seek formal permission from the court before exercising what would

otherwise have been his unquestioned right to travel outside the State of Illinois.

13.    While on bond, plaintiff's employment prospects were diminished because he had to appear in court about once each month.

14.    While on bond, plaintiff experienced the financial and emotional strain of preparing a defense.

15.    The criminal proceedings against plaintiff terminated in his favor on July 21, 2016, when he was found not guilty.

16.    At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated and condoned fabricating evidence against arrestees.

17.    At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

18.    Before plaintiff's arrest, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

19.     Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

20.     At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

21.     At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

22.     As a direct result of the "code of silence," Chicago police officers have concocted false stories and fabricated evidence in numerous cases because they reasonably believed that there would be no consequences for their misconduct.

23.    These numerous cases include, but are not limited to, the following:

a. In November of 2010, Chicago Police Detectives Edward Heerdt and Lloyd Almdale caused Paul Myvett to be falsely prosecuted for a shooting based on fabricated evidence that witnesses had stated that Myvett was the shooter;

b. In January of 2014, Chicago Police Officers, including Office John McCabe, caused David Purnell to be falsely prosecuted for gun possession based on fabricated evidence that the officers saw Purnell shooting a gun into the air;

c. In December of 2014, Chicago Police Officer Terrence Norris caused Brandon Harbin to be falsely prosecuted for battery to a peace officer based on fabricated evidence that Harbin struck Officer Norris in the face; and

d. In February of 2015, Chicago Police Officers Arthur Gorman, Nicholas Pronek, Salome Exclusa, and Kari Pfeifer caused Jermel Jackson to be falsely prosecuted

for possessing a weapon based on fabricated evidence that a gun found in a police cruiser had been hidden in Jackson's boot.

24.     In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

25.     In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

26.     In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

27.     In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

28.     On March 29, 2019, Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago Police officers "look the other way" when they observe misconduct by other Chicago Police officers.

29.     The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, the Task Force, the Department of Justice, and Superintendent Johnson was also in place when plaintiff was subjected to an unreasonable seizure from his arrest until he was found not guilty on July 21, 2016.

30.     Defendant City of Chicago's "code of silence" was another cause of the conduct of Defendants Mitchell and Otero.

31.     Defendants Mitchell and Otero concocted their false story and fabricated evidence because they reasonably believed that there would be no consequences for their misconduct because of defendant City of Chicago's "code of silence."

32.     As a result of the foregoing, plaintiff was deprived of rights secured by the Fourth Amendment to the Constitution of the United States.

33.     Plaintiff hereby demands trial by jury.

Accordingly, plaintiff requests that appropriate compensatory and punitive damages be awarded against defendants Mitchell and Otero, that

appropriate compensatory damages only be awarded against defendant City

of Chicago, and that the Court grant reasonable fees and costs.

/s/  Kenneth N. Flaxman
KENNETH N. FLAXMAN
ARDC No. 830399
Joel A. Flaxman
200 S Michigan Ave Ste 201
Chicago, IL 60604-2430
(312) 427-3200
*Attorneys for Plaintiff*